Our next case this morning is number 16-2163, Integrated Claims Systems, LLC versus Travelers Lloyds of Texas, Mr. Ward. Good morning. I have three points that I'd like to make this morning. The first is that the board's decision was fundamentally flawed because they refused to interpret the term field. The term field has a very specific and defined use and to not accord it that definition tainted the rest of the board's decision. The second point I'd like to make has to do with the board's finding that all of the hardware and software components used in the claims systems were generic. To reach that conclusion, the board had to ignore the express disclosure in these patents that the claim systems use specialized AIC software that is installed on all of the hardware components. And when that's accomplished, you have a specialized system. It's not a generic system. And finally, from the very first, we've asserted that these are not covered business method patents. And we believe that the court's recent decisions in unwired and secured access strongly support our positions. If I could go back to the first point, fields. Again, the board decided that there was no reason that it had to interpret that term. We suggest that that was an error. I would point the court's attention to the specification. And the term fields is used a number of times, but I think probably the clearest definition is provided at column 13, starting at line 40. And that's the appendix 0125. And I'll just read a short section. It will be appreciated that the PAC form, which displayed on the computer screen 212, contains boxes, such as those depicted in figures 5A and 5B, in which alphanumeric characters can be entered so that when the characters are entered in these boxes, they are entered so as to fill a quote field, end quote, a delimited alphanumeric character string. Being a quote field, unquote, the information denoted by the characters can be transferred to and used in completing other fields in related documents. This is a clear disclosure that the applicant was defining field directly as a delimited alphanumeric character string and not the way the board seemed to use it in its decision as just the boxes that you would see on the screen or on a paper form. So the board says boxes, and you say boxes in which you can enter numbers and letters. Yes, Your Honor. On the screen, a box that you would see, you would perceive as a human, is not perceived that way by a computer. So there is a delimiter, and that's essentially a label, and that identifies what the expected information is going to be. And then, entering an alphanumeric character string… You mean like a box that says name next to it? Well, it would have an identifier within the software that would correspond to name. It may not actually say name, but it would identify that what was expected to be coming next is name. Well, you didn't invent fields even under your definition, right? I'm sorry, what was that, Your Honor? You didn't invent fields even under your definition. Well, we didn't invent fields in the term of fields on a paper form, certainly not. But we did invent fields as they're used in this application. You were the first one to invent computer fields? The first in applications where attachment information… No, but the answer to my question is no, you did not invent computer fields. No, certainly, Your Honor, there were computer fields before our time. Did you invent attaching… Correct. Wait, wait, did you invent attaching documents to a message? No. That was not a problem in the prior art. The problem was that large entities such as insurance companies, law enforcement agencies, universities had legacy mainframe computers. The problem with legacy mainframe computers is they're great for storing information, but they had shortcomings. You could not display an attachment such as an X-ray or fingerprints or photographs on a mainframe. It does not work. I appreciate the importance of this issue. I'd like for you to address the bigger issue, and that's the 101 issue. Well, we think, Your Honor, that they are tied together because by failing to interpret fields as being a separate, unique component to this invention… I get that, but apart from the construction, the claim construction, let's go right to 101. Why are these claims directed to or not directed to an abstract idea? No, we don't think they're directed to an abstract idea, Your Honor. The board focused on an abstract idea of effectively moving data, but that really wasn't the point because data was already being moved. We acknowledge in the background that insurance companies had already developed systems where standardized forms, including just the information like name, address, could be submitted directly to the mainframe. The real question here seems to be whether it's an innovative concept at Step 2 of ALICE. You rely on this ACI software, which you mentioned earlier. And arguably that might apply to Step 1 of ALICE as well. Well, let's consider it at Step 2. Fair enough. The problem is that you mention ACI software, you mention a function that it performs, but you never describe what it is or how to create it. Well, we do describe what its function is going to be, and… But there's no description of it except in terms of the function that it's going to perform. That is correct, Your Honor. There is limited description, and that would be an issue for a program. But once you're provided with a detailed explanation of what needs to be done, that's a relatively routine matter. The claims don't provide that direction. The claims do not provide that direction. They directly claim the systems and methods, in terms of functionality, not exactly. The claims are directed to the functions. Correct. That's abstract. Well, I guess it's a… Trying to figure out what's abstract and what isn't is a little difficult these days. It's not that difficult. If you're just claiming, if your claims are directed to a function and you don't explain how you're going to get there, then your claims are directed to an abstract idea, such as filling in the blanks. Right. Well, the abstract idea that the board found was that this was just portioning data. Yeah. That's what the claims seem to be directed to, portioning data. I would suggest, Your Honor, that there's a whole lot more, because the problem… This is what I'm asking. Yes. What whole lot more? The problem with existing mainframe systems, Your Honor, was that you could not pull up the attachment data. So, for example, an insurance dentist can receive the form that has the actual information about the patient, the procedure, etc., from the mainframe. It's already been submitted by the dentist. But he cannot pull up the supporting documentation, such as an X-ray. The mainframe can't provide that to him. Yeah, but what your patent does, it says allow him to pull up the X-ray, but it never tells him how to do it.  It does because what it suggests is an improvement to the existing computer network by adding a buffer computer that would have the capability of pulling up the attachments, such as the X-ray. But it doesn't tell you how to program the buffer computer to do that, right? It does say that the specialized AIC software is going to be installed on the dentist's computer, on the buffer computer. Yeah, but software that you would read isn't described in the patent. Other than by its function? By its function, yes, Your Honor. You want to save your rebuttal time? Yeah, thank you, Your Honor. I do want to save my rebuttal time. All right, Mr. Burns? Good morning, Your Honor. May it please the Court. I believe Your Honor has put your finger on a particular issue involving the Alice issue, both Your Honors. The patents at issue here do not describe any detail of the AIC specialized software, beyond actually stating in the patents that existing commercial software could be used, such as Lotus Notes, Java Applets, and also recognizing that graphical software of the day could be used as well. The determination of whether or not a particular claim makes a patent, a CBM patent, has been held to be a question of fact. Is that right? I understand that the review is a de novo review. No, it's arbitrary and capricious. Arbitrary and capricious of whether or not a CBM has been authorized. Yes, it's not a de novo review. It's arbitrary and capricious. Arbitrary and capricious. It's like the opposite of a de novo review. Correct. I was thinking of Alice as de novo. So is there a legal issue you're familiar with that we review for arbitrary and capriciousness? No. Whether or not. No. No is the answer. So do you think it's a fact question whether or not a particular claim in a patent is a CBM review that we need to give deference to? Arbitrary and capricious deference. I believe deference should be given. Do you believe it's a fact question? I believe it involves factual issues, ma'am. Can you name any legal question in any field of law? I'm not going to limit you here that the court reviews for arbitrary and capriciousness. Well, I'm pausing here at this time. I'll let you pause. You might have me spun around. I apologize. Is that a fact question or a legal question? This is one of the things we have to review. Shouldn't you know whether it's a fact question or a legal question? I believe that in reviewing whether or not the patent office, the patent trial appeals board, correctly identified whether or not it's a CBM is a legal issue. That we review for arbitrary and capriciousness? Yes, ma'am. And yet you can point me to no case in any field of law where any court reviews such a legal determination for arbitrary and capriciousness. I believe that Unwired basically said that it should be reviewed. No, Unwired said the statutory question of how you interpret the statute is a legal question. But whether a particular patent is a CBM patent is a factual question. Then I might not be able to answer that question. Okay. All right. Well, do you believe in this case that the patent office decided that this patent presented a claim that was directed to the financial industry in a manner that is consistent with Unwired Planet and secure access to two most recent cases that have come out of our court? Yes, I believe that. So walk me through how it did that because you no doubt know that it used the same language that we said was the wrong legal test. That's correct, yeah. And that no doubt when we asked you to come to oral argument prepared to discuss these cases, you became alarmed, I'm sure. Well, what the PTAP did in reviewing these two patents, it identified the statute as well as the court's decision in… I don't see that they used that incidental to language. They used the related to language, which had been approved in Versada and the other cases in secure access. That's correct. Say, for example, for involving the 768 patent at Appendix 17, the PTAP found both under the statute, under Versada, as well as the complementary and… Okay, so you want me to look at Appendix 17? Yes, ma'am. Okay, so Appendix 17, you think this is where they used the right standard. Didn't use the wrong standard because they used the wrong standard unequivocally at page, let's see, 14, right? 14 is where they said the incidental to or complementary to language. That's correct. That's the wrong standard. But at page 17, they used the right standard. What claim are they addressing at page 17? Okay, so if we turn to…they are addressing all the claims that were challenged, and they noted… How do we know that? Okay, so if we go to the middle of the paragraph on Appendix 17, for the paragraph that says accordingly, if you go down to the middle bottom where it says, we thus agree with the petitioner that the challenge claims, not just claims 11 and 30, claim a corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service, citing 18D1. But then it also has the quoted language about incidental or complementary to. Well, but it says, ma'am, it says, I apologize for interrupting you, financial-related activities under PSAS, and then it says, and the activities that are financial in nature, incidental to a financial activity or complementary to a financial activity. The preceding pages lay out a very detailed explanation from pages 14 to 17 of how the PTAB went through the analysis of the claims. In particular, for this… Now, since secure access has come out, do you understand secure access to stand for the proposition that the financial aspect must be present in the claim? It's not enough for a general claim that could be used in many different fields to be argued, well, this could be used in the financial industry, even if the claim on its face doesn't say that. Is that your understanding of secure access? I mean, that pretty much is what laid out between the majority and the dissent, so… What I see in finance, in secure access, secure access is telling me I don't need talismanic language, I don't need any magic language… No, but you do need financial language in the claim. But what I do need, it says the statutory definition of a CPM patent requires that the patent have a claim that contains, however phrased, a financial activity element. So that financial activity… Right, so in Claim 1, you would not see a specific identification of financial service or product. However, when you review that, and we'll talk about the Dependent Claims 11 and 30 that specifically call out insurance claim forms and insurance. But if you look at that particular claim and you interpret it according to the specification… Which word am I interpreting according to the specification that will draw in the financial nature of this invention? Because on its face, divorced from the specification, you can't disagree this just says an electronic system with a bunch of fields. I mean, you know, it's about as abstract as they come. But, you know, it doesn't have any specificity to it whatsoever, which helps you in your 101 case, but it kind of hurts you in whether this is a CBM because it just says an electronic system with a bunch of fields. You know, and so that clearly is not a financial product or related to the financial industry. It might be an electronic system capable of being used in those places. But on its face, that claim has no such limitations. I understand what you're saying here, Your Honor. So I understand your question. My response is when you look at a claim, a general claim, that is it's data processing that can be used in the management of a financial product or service. That's enough? You look to the specification to see what type of – what is this data processing for? This data processing is, if you look at these patents, they are 99.99% directed to submitting an insurance claim, which is a request for payment. And some of them specifically refer to that. Absolutely correct, Your Honor. So we do have dependent claims that are directed to – for this particular patent and both patents that are dependent claims. Here you have claims 11 and 30 for the 768 patent are directed to an insurance claim form or insurance. And what – as even the secure access says, you're looking for a single claim of the patent that then qualifies the patent for CBM analysis by the PTAC. So, I mean, I understand your point about claims 11 and 30. My problem with that is that in the specific analysis of 11 and 30, that's where the board really got the standard all wrong. It articulated the wrong standard. What I don't understand, though, is your defense of Claim 1 after secure access. I am baffled. And I know you're absolutely right. You only need one claim, and then it's a CBM, the whole thing. And the PTO has the right to look at every claim in it. But I'm baffled at how you can defend Claim 1 after secure access. And just so you know, I actually made my clerk pull every board decision that's been decided post-Unwired Planet and secure access, and every one of them say these cases stand for the proposition that the claim itself must have language in it tying it to a financial industry, which is great for you with claims 11 and 30, don't get me wrong, but not for Claim 1. And I just – I guess I just want to be clear about what your argument is on Claim 1. As we're being told, we're looking to interpret this claim. It doesn't have to use the word insurance as long as that's the primary object. How do we know it's the primary object based on Claim 1? So is it a data – is it a claim – is it a patent that claims a method for data processing that is used? We have a claim for a method of data processing. That's Claim 1. And then we look to the specification for how that claim is being used or interpreting that claim in light of the specification. As we're being told, we do not need to have the magic talismanic language. And I understand that secure access says you need a financial activity element. In the claim. In the claim itself. My submission would be that – But the fact that you can use a program, a computer program, in banking or – that's not enough. Because at the end of the day, almost every computer program can be said to be used in the financial services sector. Well, let me approach it this way. I mean, that's right. I mean, the fact that some program could be used in the financial services industry is not enough. It has to be directed to – primarily directed to the financial services industry. When I read secure access, I started thinking to myself, is the court attempting to articulate a sliding scale? If you have a claim – say you have a claim that, you know, so far there's been about 140 decisions by the PTAC and there's going to be another 200 to 300, 400 coming down the pipe on CBMs. If you have a claim that's directed to a general data processing claim and it does not have any magic or specific language that says finance in the claim itself, but yet the patent overall is otherwise directed to a financial product or service, it's very clear. If you read these patents, it's all about submission of a claim, which is a request for payment. Well, I'm not sure you need to do that. I found various references to what I view as to be the financial services, and that's the insurance industry. And you get saved by those claims. I think Claim 8 and Claim 21 reference to insurance services. But Claim 1 does not. I would still submit that in reviewing CBM, under the definition you have a patent for a claim directed to a method for data processing. It's for data processing, and it's used in management of a financial product or service. I don't think the statute specifically requires that the data processing claim itself must have some sort of a claim directed to a financial system or product or service. I don't think it's required. I think all you need is data processing that is for use in the management. Well, then all data processing can be said to underlie a CBM. But if you look to the patent… It's not whether the functions that are being described can be used down the road in a financial services industry. I agree with that, but we're looking specifically… It has to be something primarily used, right? I mean, the fact that it could be used in this industry, financial services, in other industries, in general, that doesn't cut it. It has to be primarily designed. And here in this specification, you have, like, hundreds of references that that's what this is about. The editors for West, when looking at secure access and trying to characterize it in one of their headnotes, they used the language merely. The patent, did it merely involve a financial service or product in trying to interpret secure access? And if you do have a patent that is predominantly and is primarily directed to a financial product or service, that's what I believe Congress is attempting to characterize in using this definition. But then why did Congress… I mean, we answered this question in secure access, and you may be standing there as long as you want and trying to tell me what you think the statute means, but I'm bound by the precedent that came before my court. And my court has already determined that the words in the statute that include, quote, a patent that claims, means… I mean, Judge Blager could not have laid this out any more clearly. He says, the question is, is it enough? And he goes through, did it be in the specification or must it explicitly be in the claims? And then he goes through and says, and then he answers that question, the phrase, quote, a patent that claims requires that it must claim. So I just don't see any ambiguity in there for this notion that the specification can tell you what a generic claim that could be used in any industry is really meant to be used for by the patentee. I'm just really at a loss for how you can justify your argument in light of secure access. Your argument is the dissent in secure access. It's a well-written dissent. It makes compelling points. But it's as clear as the dissent, your argument. It is clearly on all fours with the dissent. And so I don't understand how you can suddenly – I mean, as much as you might wish to flip the majority in the dissent, I don't see how you can do that, and I'm bound by the majority. In my attempt to follow secure access, where it says, however phrased, a financial activity element, I took that to mean to look to the specification to see if I can – It doesn't say that the language has to be in the claim, right? Well, it doesn't have to say – Secure access says I must have a – Well, I think there may be a difference of opinion about how to interpret secure access. It says a claim that contains, however phrased, a financial activity element, which I then took to use Claim 1, the general function that is recited there. Is that a financial activity element? When I review it, the entire package is included. The general function? The PTO said that the words that indicated it was a financial industry-related product were the words an electronic system. Wow. And in UNWIRED, we said that it can be something that just can be related to, like a light bulb, a claim for a light bulb. And then later you say, well, these light bulbs work very well in bank vaults, and therefore it's a CVM. It's related to. You said in UNWIRED that's not enough. But for a light bulb, I go back to the statute. We're looking at a data processing claim, not a light bulb. We've got a data processing claim that is used in a financial product or service. And I understand what we have said here in secure access. Anything more? No. Yes, please. Okay. I think we're out of time. All right. Thank you. Thank you, Mr. Burns. Mr. Ward? Thank you. I just want to go back to the final decision. And if you look at the appendix at 0053, at the bottom of the page, you'll see under the caption, Canceling Claim 36, that the board notes that in the institution decision, we determined that the 020 patent includes at least one claim directed toward activities that are incidental or complementary to a financial activity and highlighted Claim 36 as such a claim. In response, we moved to Cancel Claim 36, and in the other patent, Claims 11 and 30, and that was granted. If we go to... But the board held, and I'm not sure this is wrong, you've got to prove why it's wrong, that you don't look at what the patentee is later saying the scope of his patent is. You look at what the scope of his patent was when the petition was filed and this whole proceeding was instituted. Because otherwise, it's like a constantly moving target, you know? I mean, it makes a lot of sense, that holding. So why is that holding wrong? Why does it matter that you dismiss those claims? Well, with all due respect, Your Honor... And you didn't file a statutory disclaimer, by the way. We did not. Whether that has any real difference or not, I'm not sure. Well, there's one case that says if you would file a statutory disclaimer... There was one case. ...that actually those are... It's as if it never existed. So that case would actually have presented a good argument for you. Perhaps, Your Honor. I'm sorry. I forgot the question that you had asked. No, me too. Don't worry about it. Thank you. At the appendix at 0057, I just want to point out that at the last sentence of the next to last paragraph, it says, Petitioner also states that patent owner has asserted the 020 patent against at least 15 insurance companies. And that is something that's... Secured access is inappropriate. And just so it's crystal clear, at 0059, middle paragraph, the board points to the legislative history of the AIA and Senator Schumer's comments to, again, cite to the incidental or complementary standard that's no longer usable. Suppose we were to reject your contention that we shouldn't consider these claims that you surrendered. Suppose we agree with the board that those claims were properly considered in making the CBM determination. Okay? Yes, Your Honor. Do you agree that under those circumstances, they properly determined it's a CBM patent? No, Your Honor. Why not? We moved to cancel just out of an overabundance of caution. We did not believe that those claims, when properly viewed, are related to a financial activity. Why not? Because the underlying invention doesn't change. So, Your Honor, the invention was described in terms of an insurance company. There's no way to get around that. But it was also noted that the invention was not confined to insurance companies because it wasn't really related to insurance. It was about transmitting and displaying data that couldn't be transmitted and displayed in this way previously. But it sounds as though you're saying we don't look to the individual claims. Well, we have to look to what's behind the claim, and that's the invention itself. So, Your Honor, one of the other alternative uses was in law enforcement. So I suggest to you... But none of this answers Judge Dyke's question. His question is, if 11 and 30 are in, which don't talk about law enforcement, they expressly talk about insurance claims. Those claims are limited to insurance claims. And his question to you is, if 11 and 30 are in and the claims expressly limit themselves to insurance claims, why isn't this within the financial industry? You can't talk about law enforcement. These claims are narrower than that. The claims are narrower because they define use. But what I meant to suggest in answer to your question was that if these claims had been directed to the use of law enforcement, I don't think we'd be here. But the invention itself is unchanged. They're not. They're directed to insurance. That's the problem. All right. Thank you. Thank you, Mr. Ward. Thank you very much. Thank both counsel. The case is submitted.